## US BUNKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK                    Honorable Judge Peck

## IN RE: GREGORY PAPADOPOULOS                        INDEX12-13125

## AP: GREGORY PAPADOPOULOS Plaintiff              INDEX 13-_____

## V

**Trustees IAN GAZES, TRACY DAVIS (Personally and Officially) collectively the trustees.**

**FBI NYC Field Office Directors GEORGE VENIZELOS, JANICE FEDERCYK, JOSEPH DEMAREST (Personally and Officially) collectively the FBI**

**ALFONSO FANJUL, JOSE FANJUL, JULIA MINEEVA, RAY ZEMON, MATTHEW PRESS, collectively the Palm Beach/Caribbean Mafia.**

**Defendants**

**JURY TRIAL DEMANDED**

## COMPLAINT

I Gregory Papadopoulos duly sworn deposes and says:

I am the Plaintiff in this action.

I bring this action against the Defendants pursuant to US Bankruptcy code, IRS tax code, RICO, FTCA, Bivens, NYS Tort statues, for conspiracy and fraud on the Court to extort, induce and perpetuate Bankruptcy filling with catastrophic consequences and results.

All claims are pre-tax claims assuming a marginal tax rate of 50% for New York City residents. I am claiming $3.7 million trembled by RICO to $11.1 million which is the amount of my Net operating Tax loses as defendants conspired to encumber my NOL.

I am claiming $3.3 million for my time and costs of 10,500 hours spend trembled by RICO to $9.9 million.  As of September 1, 2013 I have spend approximately 1,500 hours in this bankruptcy proceedings. I have spend 3,500 hours defending bogus claims against me intended to obtain approximately $350,000 in

judgments and thus induce bankruptcy filing. I have spent 1,500 hours defending bogus criminal allegations by the Defendants. I have been wrongfully imprisoned and detained for six months or 4,500 hours in order for the Defendants to deplete my remaining assets and obtain numerous adverse and prejudicial judicial decisions during my incarceration and detention. Additional hours are claimed until the conclusion of the bankruptcy proceedings. (12-13125)

I am claiming $1 million in pretax dollars as of September 1, 2013 escalating at the rate of $100,000 per month until bankruptcy is concluded for the deprivation of my Net Operating Tax Losses as losses during bankruptcy pass on to the control of the trustee.

I am contingently claiming $100,000 in pre-tax dollars as of September 1, 2013 escalating at the rate of $10,000 per month in the event a discharge is granted (12-13125) to compensate for the escalation of Cancelation of Debt income.

I am contingently claiming $1 million in pretax dollars in the event bankruptcy (12-13125) is dismissed which is the pre-tax amount required to satisfy all judgments and debts. **I am entitled to a discharge as a matter of Law.** See motion for summary judgment.

An unspecified amount of property, trembled by RICO, for stolen, destructed, or vandalized property which was composed of cash, furniture, two cars, a boat and other for the purpose of inducing Plaintiff's decision that without much property filing for bankruptcy was a rational economic route.

An unspecified amount of damages trembled by RICO due to physical injuries suffered.

I am claiming $501.10 for copy and travel expenses to copy documents demanded by the Trustee and Press as they refused to avail themselves to review originals, advertised willingness to pay, and refused to pay when copies were made and forwarded to them. This amount also includes $20 for a bogus deposition subpoena issued by the Trustee without being accompanied by the necessary fee.

Last I am contingently claiming unknown sums for any damages suffered due unforeseen consequential event such as IRS audits, incarceration or detainment or any other unforeseen events resulting from the this conspiracy to extort filing

of bankruptcy and indefinitely perpetuate pendency and defraud this court as to the existence of hidden wealth.

All these claims relate to a conspiracy by the Defendants to induce and extort bankruptcy filing and the Bankruptcy petition itself, and accordingly this court has jurisdiction pursuant to FRBP 7070. Early on in these proceedings Plaintiff sensing conspiracy made a good faith effort to minimize damages and filed a "motion to dismiss petition due to hardship" but the Defendants, having no potential rational economic benefit objected to the dismissal and the Court concurred with the Defendants.

## The FBI, Palm Beach/Caribbean Mafia cooperation

In 1996 the SEC found the Fanjul Brothers, exiled Cuban Gangsters in the sugar cane farming business with massive cane farming and resort operations in the Dominican Republic guilty of bribery and fined them a rather hefty fine of $440 million. Similarly the Administration was pursuing a tax on domestic sugar cane production to clean up the Everglades. The Fanjul Brothers to avoid criminal prosecution for bribery and to curtail the Administration's efforts of the proposed sugar cane tax, bribed the then FBI Director Freeh seeking protection. Promptly Freeh commenced a "sting" with a Monica Lewinski for the purpose of impeaching President Clinton. Those efforts were unsuccessful. However Freeh and the Fanjuls concluded that a FBI-Gangster cooperation was a marriage made in heaven. The FBI in the name of law enforcement could destroy the lives of innocent people and businesses and the Fanjul's could acquire their illiquid assets at distress prices or steal their cash and share the profits with FBI officials. When Freeh was replaced with Mueller, Mueller perpetuated the corrupt but highly profitable enterprise.

Notable victims were the Madoff clients, MF Global, Lehman Brothers Independent Trust Co., Bear Sterns, Alaron Trading, Peregrine Trading, Refco, plaintiff's company Revcon, some 300 wealthy Palm Beach families and residents and the undersigned. In many cases the Courts erroneously concluded that it was management's fault it taking excessive risks that brought their demise but in reality managements took risks compensating for the relentless siphoning of their cash to Caribbean Banks by the Fanjuls and the FBI. This operation was so methodical and exhausting that none except one of all the major companies that Revcon had sizable accounts with survives today. A reasonable estimate is that the Fanjul Brothers and high level FBI officials have unjustly enriched themselves

as a result of these operations in excess of $50 billion over a short period of 15 years.

## Plaintiff's demise

In 1997 the FBI commenced an operation to cause Plaintiff's demise for profit of the FBI/PBM enterprise. Since the FBI likes catchy names for their operations let's assume that it was named "Operation Pulverize Papadopoulos". In 2000 they effectively shut down Revcon. In 2001 they caused a divorce. For the years 2002-2010 they entangled him with prostitutes and as early as 2008 after Plaintiff was defunct they started planning Bankruptcy. <u>Since over the years Plaintiff had accumulated substantial net operating tax losses in the amount of $3.7 million they reasoned that "Operation Pulverize Papadopoulos" would not have been complete until those valuable losses were encumbered.</u> In addition during Bankruptcy they could finally legally deprive Plaintiff of his constitutional right to property by indefinitely prolonging these proceedings, possibly fabricating bankruptcy fraud and portraying Plaintiff as the cause of his demise. By far however, the most common practice pursued by the FBI/PBM in numerous other similar bankruptcies of their victims is to convince the Court to order a premises search and seizures. They then always plant something incriminating and claim bankruptcy fraud.   See In re: Abraham Gosman SDF 01-30953 Judge Hyman formerly with the SDF US Attorney's Office presiding.

For the years 2001-2013 massive litigation ensued. Plaintiff commenced cases in New York against FBI decoys, informants and coconspirators as well as employees of the Fanjul Brothers. Plaintiff also commenced several federal civil rights and RICO actions against the FBI and the Fanjuls.  The FBI/PBM counter sued for the purpose of obtaining substantial judgments and eventually inducing a bankruptcy filing. Virtually all 50 cases were assigned to Judges formerly in criminal justice and ideologically friendly to the FBI or judges native of the Caribbean presumably with offshore bank accounts that the Fanjuls could entice. This pattern of judicial assignment of some 50 cases clearly proves the Fanjul-FBI cooperation.

Obviously through electronic surveillance the FBI had advance knowledge of Plaintiff's litigation plans. Directors of the NYC FBI field office Demarest, Federcyk and Venizelos routinely ordered their agents to rush ahead of Plaintiff in any court and to coerce the Clerk of the Court to assign cases to a judge ideologically friendly to the FBI or to a judge from the Caribbean with offshore

connections were the Fanjul brothers could possibly entice the judge, all before Plaintiff naively appeared in court filed a complaint and paid the fees.

This pattern of judicial assignments is definitive and tangible proof of the FBI Fanjul cooperation. See **Exhibit 1** for a discussion of the more substantive cases, judicial assignments, outcomes and computation of cumulative probabilities of such judicial assignments definitely proving the Law Enforcement Caribbean Gangster conspiracy.

## Specific Conspiratorial actions by the Defendants

Starting in 2008 Plaintiff sued the FBI/PBM in the SDNY 08-11256. Immediately Demarest retained Mineeva a prostitute from the Fanjul NYC prostitution ring to entrap Plaintiff in criminal activities. Mineeva unable to deliver proceeded with bogus criminal allegation of verbal harassment. Plaintiff was arrested for calling Mineeva "a prostitute working for the FBI" which indeed she was. Mineeva also lied stating that she had given "no contact notice" while subsequently routinely appearing asking for money and offering sex. She also fabricated other verbal incidents in bogus locations. Federcyk, Demarest's successor insured that this case was assigned to a Judge Amaker a native of Puerto Rico. She also insured that the defense attorney appointed to him was a Ms. Chevalier native of Haiti. Federcyk knew that the Fanjuls could and would bribe the Judge and the Defense Attorney in exchange for their cooperation. (**see footnote 1**). Eventually, Plaintiff was illegally incarcerated and detained for six months. During incarceration and detainment Federcyk advised Zemon and his Attorney that the cost was clear and to commence highly prejudicial ex-parte litigation intended to portray Plaintiff as a deceitful fugitive from his creditors while he was indeed incarcerated and defenseless. Zemon promptly complied.

**Footnote (1)**.  Plaintiff in making those allegations researched public records pertaining to Judge Amaker and found that after University she worked for 9 years as NYS Assistant DA in the Bronx at a salary of less than $90,000 and lived in a modest rental in Westchester Co. In 2010 she was appointed NYC Local Criminal Court Judge at a salary of less than $120,000. In 2011 two months after incarcerating and ordering Plaintiff in a mental institution she purchased a $1 million residence with $10,000 in real estate taxes in the Fieldstone section of the Bronx, jointly with a male friend putting down approximately $500,000. A year later she transferred the property exclusively to her own name.

For the years 2008-2010 Demaresk to extort filing of bankruptcy insured that his agents assigned numerous cases to Judges native of the Caribean or judges formerly in criminal justice. Marks Peneth v Papadopoulos NYS Supreme 601039-08 was assigned to Judge Sherwood a native of Jamaica resulting in an absurd $100,000 judgment against Papadopoulos. Similarly in Papadopoulos v Tama Davis NYS Civil 07-067932 Demaresk insured that this case was assigned to Judge Engoron a member of the Bar of the Dominican Republic. The outcome of this case was an absurd adverse Judgment for the Defendant in the amount of $65,000 by a Judge Nervo formerly a criminal court judge.   In Papadopoulos v Mercedes NYS Civil 077246-08 Demaresk again assigned this case to Judge Engoron resulting in an adverse judgment for the Defendant in the amount of $120,000. At that point Demaresk and Federcyk were ecstatic at their success. Including the $100,000 Judgment obtained by Zemon, a Caporegime with the PBM in Florida and Chicago, they had loaded Plaintiff with $385,000 in judgments and knew bankruptcy filing was a matter of time.

They had however to insure that Plaintiff did not prevail in any other claims. They insured that the Appeal of the original SDNY case Papadopoulos v FBI/PBM was assigned to the only 2nd Circuit Judge from Puerto Rico to write the opinion who affirmed dismissal. When three new actions were filed in the EDNY against the NYS, the FBI/US Government and the Fanjuls, Federcyk insured that all actions were assigned to the Honorable Judge Irizarry the only native of the Caribbean (Puerto Rico) in the EDNY and of course were all instantly dismissed.

In 2011 and while Plaintiff was incarcerated and detained Defendants insured that a $45,000 car disappeared, belongings were trashed and SS Retirement benefits were stopped hopefully inducing bankruptcy.   When Plaintiff was released and SS benefits were retroactively reinstated Federcyk advised Press, Zemon's attorney to restrain about $4,000 knowing from SSA that that amount was going to hit in a certain account on January 3, 2012. Promptly Press complied the very next day and was successful it temporarily restraining these funds. With Federcyk's assistance Press proceeded with subpoenas and restraining orders in gross violation of the "Interstate Discovery and Depositions Act" illegally restraining funds and obtaining information in states such as Illinois, Ohio and Nebraska without local court filing as required.

On July 24, 2012 Plaintiff filed for Chapter 7 Bankruptcy in the SDNY. Again Federcyk, as always selected the judge, and since no judges from the Caribbean or former prosecutors were available selected a certain Court for unknown

reasons. Demaresk had already assigned to the same Court the FBI/PBM's two biggest trophies, Lehman Brothers and Madoff Securities within three months apart. Later, and since this Court refused to preside over the Madoff case, Federcyk permitted the MF Global case, the third biggest FBI/PBM trophy to be randomly assigned. Federcyk and Davis however, in the MF Global case to protect and enhance the financial interests of high ranking FBI officials and the Fanjuls assigned Italian citizen as of 2009 and former FBI Director Freeh as Trustee. In the Papadopoulos bankruptcy Federcyk and Davis also selected the Trustee. Routinely the FBI in their operations retains criminals for assistance. In Boston they retained notorious gangsters James (Whitey) Bulger and Stephen (Rifleman) Flemmi as informants and during Papadopoulos v. FBI/PBM SDNY they retained Mineeva a prostitute working hotels, residences and bachelor's parties. Similarly Federcyk and Davis retained Gazes, dressed him in a suit and crowned him brand new Trustee in charge of fraud on the court.

A no asset Chapter 7 case usually lasts for four months. This case is in its 15th month as Zemon, Press and the Trustee are defrauding the Court. During the Criminal proceedings Federcyk's strategy was to portray Plaintiff as a lunatic, suffering from delusional disorder, psychosis, paranoia and schizophrenia, unfit for trial, unable to understand the function of the judge, the prosecutor, the defense attorney and the jury and in need of hospitalization. Venizelos, Federcyk's successor had a different idea. Venizelos' idea was during bankruptcy portraying Plaintiff as a brilliant deceitful calculating crook defrauding his creditors by running huge trading businesses under a fake name and catapulting $20 million in a space capsule in outer space and then filling bankruptcy. In sum during the criminal proceedings psychiatrists were testifying that Plaintiff was unfit for trial because he was mentally incapacitated and he had no understanding of the functions of the court knowing that Plaintiff was prose litigant in some 50 cases, had filed and responded to some 500 motions and had 1,500 hours trial experience. In these proceedings Press, Zemon and the Trustee are arguing that plaintiff has $20 million knowing that Plaintiff   only has his SS retirement income and $1,000.  **This is blatant fraud on the court.** (emphasis added)

During pendency Zemon, Press and Gazes made numerous allegations. They alleged that Plaintiff was opening and closing accounts to move funds around, that Plaintiff had huge trading operations he was hiding, that plaintiff had $20 million, that Plaintiff lived a mail box to hide from creditors, that Plaintiff used

false names to defraud creditors, that plaintiff fled Florida to avoid disclosure of assets, that they discovered shredded documents in Plaintiff's garbage, that Plaintiff was willfully ignoring Judicial orders to produce documents, that Plaintiff refused to appear for a deposition, and others. Venizelos provided assistance substantiating some of these allegations by injuring Defendant hoping he will not appear, raiding accounts hoping they will be closed and moved, routinely advising Press and the Trustee as to what documents existed and what did not for the purpose of demanding production of non-existent documents and routinely stealing or misplacing evidence held by Plaintiff. Federcyk had already insured that Plaintiff lived next to former US Attorney General Michael Mukasey for the purpose of easily braking in Plaintiff's apartment.

As Zemon, Press and the Trustee run out of ideas they retained the prostitute Mineeva to commence bogus and frivolous claims in NYS Supreme for the purpose of indicating that Plaintiff was also hiding a huge money management business.

Obviously, the entire campaign was financed by the Fanjul Brothers with funds stolen from Lehman, MF Global, and the Madoff clients, all SDNY Bankruptcy cases. Zemon already, during interrogatories served refused to respond as to his connections to the Fanjuls and the FBI. <u>Plaintiff has tangible proof that as recent as early as 2008 Palm Beach residents connected to the Fanjul Brothers were successful in promoting multibillion dollar investments in Madoff having knowledge since 2002 that Madoff was a giant Ponzei scheme.</u> (emphasis added)

As of the day of this writing a reasonable estimate is that Defendants through fraud on the court will prolong these proceedings for an additional 2-3 years resulting in catastrophic loses to the Plaintiff.

Plaintiff's claims are for conspiracy to extort filing of bankruptcy and indefinitely prolonging proceedings through fraud on the court. Contingent claims are also asserted for any future unforeseen events consequential to these proceedings.

<u>**Legal Standard for Review**</u>

Obviously Plaintiff will never be able to produce evidence of direct payments to Federcyk by Jose Fanjul. Former FBI Director Freeh already fled to Italy and became Italian citizen enjoining the secrecy of Luxemburg and Swiss banks. Similarly the FBI routinely pays decoys and informants with privileged federal information with which thousands of dollars can be made trading stocks.

Mineeva routinely received privileged FDA information from the FBI buying stocks such as Bovie Medical right prior to a favorable FDA announcement and making thousands of dollars. This form of compensation left no direct paper trail.

The Courts have found that in establishing conspiracy, due to its secretive nature "direct proof is not required and circumstantial evidence is sufficient". The pattern of some 50 cases assigned to judges, former prosecutors or judges from the Caribbean is sufficient circumstantial evidence. American Tobacco v US 328 US 781, 790; Glasser v US 315 US 60, 80; US v Williams 714 F .2d 777 (8th Cir 1983); Harley v Dormire 845 F .2d 1488, 1490 (8TH Cir. 1988); White v Walsh 649 F.2d 560, 561, (8th Cir. 1981); Sparkman v McFarlin 601 F.2d 261, 268 (7th Cir. 1979)

Similarly, "once conspiracy is established, the defendant must only have a slight connection to link him with the conspiracy". "Slight connection may be demonstrated by proof of the defendant's willful participation in the illegal objective with intent to further some purpose of the conspiracy". As such all Defendants are connected to the conspiracy to extort Bankruptcy filing and indefinitely prolong proceedings through fraud on the court.   US v Skillman 922 F.2d 1370, 1373, (9th Cir. 1990); US v Hernandez 876 F.2d 774, 780 (9th Cir.) certiorari denied 493 US 863;  US v Weaver 594 F.2d 1272, 1274 (9th Cir. 1979).

## Conclusions

Based on the above Plaintiff prays for a judgment on the claims already asserted as well as contingent claims pending disposition and closure of In re: Papadopoulos 12-13125.

This action is clearly in the best interest of the public.

I certify that all facts pleaded in this complaint are true to the best of my knowledge and that the conclusions reached are the conclusions that any reasonable man will reach having knowledge of the facts that I have.

September 11, 2013

Gregory Papadopoulos, 210E68, 10K, New York. 10065, 917-754-7979

Ian Gazes 151 Hudson st. New York, NY, 10013
Tracy Davis, US Trustee, 201 Varick st. suite 1006 New York NY. 10014
George Venizelos, FBI, 26 Federal Plaza, New York, NY. 10278
Janice Federcyk, FBI, 26 Federal Plaza, New York, NY 10278
Joseph Demarest, FBI, 935 Pennsylvania Aven. Washington DC. 20535
Alfonso Fanjul, 359 North Lake Way, Palm Beach Fl. 33480
Jose Fanjul, 3 E 77th st. New York, NY. 10021
Julia Mineeva, 3135 Goodwin Terrace, 3B, Bronx, NY. 10463
Ray Zemon, 142 Seabreeze Aven, Palm Beach, Fl. 33480
Matthew Press, 405 Lexington Aven, 7th floor, New York, NY. 10174

KRYSTAL M. MILBY
Notary Public. State of New York
No. 01MI6259978
My Commission Expires 04-02-2016

9/11/13

# EXHIBIT 1    PROOF OF THE EXISTANCE OF THE FANJUL-FBI MAFIA ENTERPRISE

## DISCUSION OF FEDERAL CASES

1. **Papadopoulos v FBI    SD of Florida 2001-8659**. Papadopoulos after four years of being harassed by the FBI filed this case prose. Papadopoulos at that time had sufficient funds to retain a civil rights attorney; however communications with civil rights attorneys were being blocked so he proceeded prose. To this date Papadopoulos has never been able to have any type of communications with any civil rights attorney specializing in police misconduct.   Case was assigned to Judge Dimitrouleas who instantly dismissed the case. Judge Dimitrouleas was a **former prosecutor** for 13 years and obviously had extensively worked with the FBI. Case was filed in the West Palm Beach division and strangely moved to the Fort Lauderdale division. All available judges in WPB, Hurley, Middlebrooks and Ryskamp were deemed undesirable as none had any background in criminal justice or an origin from the Caribbean so the case was moved to Fort Lauderdale one hour away where Judge Dimitrouleas was available.

2. **In Re: Papadopoulos SDF Bankruptcy 05-31191**. After an absurd matrimonial decision in NYS Supreme Court awarding the wife $23 million and leaving the husband owing $8 million to the wife Papadopoulos filed for bankruptcy in South Florida.   Case was assigned to Judge Paul Hyman who instantly dismissed the case retroactive to the date of the filing. He also strangely dismissed debtor's lawyer retroactive to the date of the filing to insure debtor had no counsel to appeal. Judge Hyman had an extensive prior career as Assistant US. Attorney in the SDF and obviously had **extensively worked with the FBI.** There were other available judges at the time however they all had a background in bankruptcy litigation. The FBI/Palm Beach Mafia (Fanjul brothers) relays extensively on Bankruptcy courts to generate substantial revenue. With a friendly judge, they appoint the trustee and easily take control of assets belonging to individuals and entities they caused the demise. A good example of this process can be seen in "In re: MF Global, SDNY Bankruptcy" where after bringing the demise of Refco and MF Global appointed former FBI director Louis Freeh as trustee to take control of MF Global assets. In every high profile bankruptcy case of Palm Beach residents the FBI or the Fanjuls have a presence.  The Abraham Gosman case (lost his $80 million oceanfront mansion) was assigned to Judge Hyman and in the

Jeffrey Prosser case filed in the Virgin Islands Fanjul employees testified against the debtor.

3. **Revcon Inc (Papadopoulos own firm) v Alaron SDNY 08-CIV01013** Case involved about $1.5 million in claims since Alaron a brokerage firm improperly liquated accounts on a pretext of a margin call thereby transferring $1.5 million to someone else. Case was originally filed in NYS Supreme Court with the assistance of a lawyer as Papadopoulos could not represent his company. Case was removed to SDNY by the defendant. Case was assigned to Judge Berman. Without authority from the Plaintiff counsel consented to removing the case to the ND of Illinois. Plaintiff traveled to Chicago, but strangely was unable to retain counsel and case was dismissed. Plaintiff filed his claims prose with the Chicago Mercantile Exchange Arbitration Forum. In an effort to prove fraud, Plaintiff made numerous unsuccessful discovery efforts to obtain the identity of the entity that got the $1.5 million. Plaintiff eventually concluded that the $1.5 was fraudulently transferred to the FBI/PBM was never seen again and is parked somewhere in the Caribbean.

4. **Papadopoulos v Tenet Good Samaritan Hospital SDNY 08CIV0098** Case was originally filed in NYS Civil Court and removed to the SDNY by the defendant. Plaintiff while resident in NYC sued a West Palm Beach, Florida hospital pursuant to the FCRA for improperly entering derogatory information in his credit report and cutting off credit. Case was assigned to Judge Cote. Judge Cote was a former **Chief US Attorney in the SDNY Criminal Division** for years and obviously had extensively worked with the FBI. It is highly improbable that Judge Cote was selected by lot as Local Court rules require. In an eight page decision Judge Cote argued that a NYC resident could not sue an out of state entity for entering improper derogatory credit information in his credit report and dismissed the claims. A tortuous act of entering improper derogatory information was committed in every state in the country since the ad was transmitted nationally and Judge Cote appears to have exceeded her discretion, or did not receive a complete set of papers submitted, in dismissing this case. Plaintiff had simultaneously filed three identical cases in NYS Civil Court. Plaintiff was successful in settling similar cases, before any judge intervened to dismiss them for about $5,000. This case is clear proof of the FBI/PBM cooperation. Good Sam Hospital a West Palm Beach entity under the influence of the PBM spend about $10,000 to litigate instead of settling for $5,000, making a federal case out of nothing and the FBI assigned

the case to a Judge formerly affiliated with the FBI. The most reasonable explanation of why the FBI/PBM spend $10,000 in this case would be that they felt they did not have enough control over the SDNY at the time and wanted to set a precedent that Plaintiff could not sue Palm Beach entities in the SDNY and wanted to force possible subsequent civil rights litigation in the Florida Courts where they felt they had more influence and control.

5. **Papadopoulos v FBI, Palm Beach Mafia, Palm Beach Chief of Police Reiter and Unknown FBI agents SDNY 08CIV11256**  Case was assigned to Judge Berman again and Magistrate Judge Ellis. Upon filing and serving this case Defendant Reiter and member of the FBI Anti-terrorist executive committees was fired. Defendant Reiter after working for 20 years for about $80,000 per year salary now lives the life of a multi-millioner socialite in Palm Beach. He lives the life of someone having at least $3-5 million.  Similarly former FBI director Louis Freeh fled to Italy and became Italian citizen. When Papadopoulos filled this case he had no knowledge of who the "Godfather" of the Palm Beach Mafia was and had no knowledge of the FTCA and proceeded pursuant to 42 USC 1983, Bivens and RICO. The case was really decided by Magistrate Judge Ellis who first stayed discovery. Staying discovery in any case where unnamed defendants are named is fatal to the case as the government would not release their identity and obviously the FBI and the Mafia will not identify the Godfather. Judge Ellis recommended dismissing the case pursuant to 42 USC 1983 as the FBI was immune and Judge Berman adopted the RR. Judge Ellis also recommended preemptively dismissing the Town of "West Palm Beach" even though WPB was never listed as a defendant, Plaintiff never lived there, never sued and never served WPB.  Also Judge Ellis ignored statistical proof that all other cases, federal and state, were assigned to judges having a background in criminal justice or an origin from the Caribbean. Judge Ellis is well versed with statistical proof and in fact has written several articles on the subject. Judge Ellis also did not address Bivens claims or FTCA and Plaintiff assumed that even though this case was dismissed these claims were not adjudicated pursuant to these statues and these claims were dismissed
 without prejudice. He proceeded to file therefore three new separate cases and also appealed this case to the Second Circuit. At the Second Circuit dismissal was affirmed and the decision was written by Judge Jose Cabrarnes the only native of **Puerto Rico** in the Court.

6. **Papadopoulos v FBI, SDNY 10CIV4574**  Case was for the same claims as in 08CIV11256 pursuant to FTCA where the FBI could no longer claim immunity. Plaintiff could not pursue FTCA claims in 08CIV11256 since he had to exhaust six month administrative requirements first. Judge Preska appears to have exceeded her discretion, or did not receive a complete set of papers labeling these claims as duplicative since these claims were never adjudicated pursuant to the FTCA.

7. **Papadopoulos v Fanjul SDNY 10CIV4579**  Case was filed against the Fanjul brothers pursuant to RICO after plaintiff definitively proved that they were the Palm Beach Mafia responsible for bribing the FBI including the director to destroy his life and the lives of others. Judge Preska appears to have exceeded her discretion, or did not receive a complete set of papers in dismissing these claims as duplicative as specific claims against the Fanjul Brothers were never adjudicated. In fact when Plaintiff commenced 08CIV11256 he was erroneously speculating that the Godfather of the Palm Beach Mafia was a George Matthews and that is reflected in the papers.

8. **Papadopoulos v Mineeva SDNY 10CIV4882**  Case was filed against a prostitute working for the Fanjul NYC prostitution ring that the FBI retained to entrap Plaintiff in criminal activities, probably hoping to run out the rather limited FTCA statute of limitations. The cause of action in this case was infliction of severe mental distress and two NYS psychiatrists after reading the complaint concluded that Plaintiff was so distressed that he needed hospitalization. Furthermore claims were asserted pursuant to contracts and Plaintiff included in the complaint the contract and evidence that he performed. Accordingly it appears that Judge Preska exceeded her discretion, or did not receive a complete set of papers in dismissing these claims. Cases 6, 7 and 8 were all instantly dismissed as frivolous, duplicative and implausible by the newly installed Chief Judge Preska.  Judge Preska also issued a filling ban (filling ban appears to have been drafted by Judge Preska's chambers and signed by Judge McMahon who had chambers next door at the time). Plaintiff was warned by the FBI through his son in early 2009 that he will not be able to bring another civil rights case against them again. Subsequent events indicate that the FBI/PBM in order to make themselves litigation proof prematurely removed Judge Kimba Wood an expert in RICO and Anti-trust and installed Judge Preska as Chief Judge in an effort to change the ideology of the Chief Judge. Furthermore since Judge Preska had to give notice of an IFP filing ban they staggered processing cases 6, 7 and 8. Those

cases were simultaneously filed between June 4 and June 10 2010. They were all filed within 4 business days. However the Clerk of the Court held back case number 8 to give enough time to Judge Preska to issue a warning, and after the warning was issued she processed case 8 enabling Judge Preska to install an IFP filing ban with notice.

The index numbers assigned to these cases clearly prove the "scam". The FBI and the Mineeva cases were assigned 4574 and 4882 (a very high number giving the impression that this case was filed sometime in late July) even though they both were filed simultaneously on June 4. The Fanjul case filed on June 10 gets 4579 (a very low number and it should have got a number around 4750 based on the Court's case load of about 45 new cases filed per day) and gets dismissed the very next day together with the FBI case issuing a filing ban warning as required. The Mineeva case lingers on for weeks, and eventually gets dismissed together with the issuance of a filing ban. Whoever masterminded the "scam" not only planned the appearance of notice for a filing ban, but wanted the IFP filling ban to be issued in the Mineeva case thus protecting the FBI and the Fanjuls from any subsequent publicity that the ban might have brought. Writ Certiorari was prepared for the US Supreme Court for cases 5, 6, 7 and 8, served upon the DOJ but the FBI/PBM and Mineeva through bogus criminal allegations and resulting imprisonment precluded Plaintiff from complying with the court's additional requests.

9. **Papadopoulos v Astru, Commissioner of Social Security SDNY 10CIV7980** Papadopoulos applied for disability benefits claiming that the actions of the FBI/PBM had rendered him disable as of 2000. Claims were administratively denied and claimant appealed to the SDNY. Case was assigned to Judge Sweet, who remanded the case. It was in the best interest of the FBI/PBM to create a more complete record of bogus mental illness; however it was not in the FBI's best interest to have the SSA paying for disabilities they inflict. Case was remanded to the ALJ and denied. Accordingly determination of disability is in its 6th year. Judge Sweet openly appears to be one of the most liberal/pro civil rights Judges in the SDNY. He has advocated legalization of drugs and also asserted that minimum sentences are unconstitutional based on the doctrine of separation of powers, legislative vs. judicial.

10. **Papadopoulos v Astru Commissioner of Social Security SDNY 13-3163** After months the case remains unassigned.

11. **Papadopoulos v City of New York, Town of Southampton SDNY 10CIV9454** Case was filed claiming false arrests, malicious prosecution, inflicting personal

injuries during arrest, tampering with evidence and selective enforcement of the law as both municipalities arrested Plaintiff for bogus criminal allegations by Mineeva the prostitute working for the Fanjul NYC prostitution ring. Both municipalities failed to investigate allegations that Mineeva was a prostitute repeatedly committing the crime of "criminal solicitation in the 5[th] degree" upon plaintiff by soliciting sex for money. Plaintiff had cancelled checks given to Mineeva for sex and other evidence that Mineeva lied to the police. <u>Case was assigned to Judge Daniels a **former public defender and US Attorney for 7 years.**</u> Case was instantly dismissed on the basis of the filing ban. Plaintiff tried to make a motion to leave under 10CIV4882 where ban was issued but was told by the prose office that the motion could not be accepted because case was closed.

12. <u>Gregory Papadopoulos v US Government, FBI, Fanjul brothers, Chief Reiter, Mineeva. US Supreme Court 10A865, 10A866, 10A867</u>  Petition for Writ Certiorari was pursued in the US Supreme Court seeking to remand claims against the FBI/PBM and Mineeva.  Petitioner obtained index numbers, compiled 20 booklets as required, personally served one booklet to the DOJ, and 10 booklets to the Court. The Court asked for some additional documents and returned the booklets the very next day. The additional documents were due on July 17, 2011. After the FBI/PBM saw the petition and after concluding it was meritorious, financially enticed <u>NYC Criminal Court Judge Amaker, a native of **Puerto Rico** to illegally incarcerate Petitioner without bail for allegations of a misdemeanor on June 14, 2011</u> thus preventing petitioner from complying with the Court's additional requests. Petitioner remained incarcerated and involuntarily detained for 6 months and obviously abandoned the petition as it was no longer timely upon his release.  The complainant in the criminal allegation was Julia Mineeva the prostitute from the Fanjul NYC prostitution ring.

13. <u>Papadopoulos v Amaker, Rabinowitz, Cuomo. EDNY 12CIV3608</u>  Case was filed as a paying case against NYS and its officers claiming malicious prosecution, wrongful imprisonment, wrongful detention in a mental institution, gross violation of civil rights to property, free speech, and infliction of cruel and unusual punishment. <u>Case was assigned to the most desirable Judge the FBI/PBM could find, Judge Irizarry. Judge Irizarry, just like defendant Judge Amaker is a native of **Puerto Rico**, and 15 year NYS prosecutor, Local Criminal Court Judge for 3 years and former counsel for the State.  By statue as a former counsel for the defendant she cannot sit in this</u>

case. Accordingly motion seeking disqualification was filed pursuant to 455(a) and pursuant to the Act of 1792 stating "a counsel for either party cannot sit as a judge". It is extremely improbable that Judge Irizarry was selected by lot as Local Court Rules require. There are 26 district judges in the EDNY. 16 have no background in criminal justice or a background with any federal or state Attorney's office. Their background appears to be private and academic. The Honorable Judge Irizarry is also the only judge with an origin from the Caribbean, i.e. Puerto Rico.

After a year the case was summarily dismissed. Petitioner in his complaint, supporting affidavits and motion for summary judgment included NYS Criminal Procedures Law statues (CPL) that were bluntly violated such as refusal to fix bail (CPL 530 right to bail when the highest charge is a misdemeanor) and gross violation of CPL 30.30 Readiness by the Prosecutor (NYS version of speedy trial constitutional rights). He also included transcripts indicating that Prosecutor never announced "readiness" in open court as required. Petitioner also included psychiatric reports of detaining state psychiatrists. In their reports state psychiatrists erred in labeling the charges "Aggressive Harassment in the 2nd degree" (no such crime exists in NYS) and erroneously assuming it was a violent misdemeanor. Accordingly they improperly detained Petitioner in a mental institution for 3 months with an erroneous determination of dangerousness. Petitioner was only charged with "Aggravated Harassment in the 2nd degree section 1" a non violent misdemeanor. The charges that were attached to the papers and clearly showed that Petitioner was arrested and prosecuted for calling Mineeva a "prostitute working for the FBI" which indeed she was. Therefore the entire arrest, prosecution, imprisonment and detention in a mental institution were clearly punishment for exercise of 1st Amendment constitutional rights.

Last Petitioner asserted that involuntarily detaining a non-dangerous mentally healthy individual in a Mental Institution constitutes "cruel and unusual punishment" as narcotics and other dehabilitating, addicting and life shortening drugs are forced with syringes upon  detainees over their objections. Also detainees are treated as having the developmental age of a 4 year old having to report their frequency of bathing and are deprived of even a pen to write with or even a library with books written for adults. Petitioner is unable to find any US Supreme Court decisions addressing this subject as most decisions regarding "cruel and unusual punishment" appear to deal with the severity of sentences.

14. **In Re: Papadopoulos SDNY Bankruptcy 12-13125, Zemon v Papadopoulos AP12-01907**   Papadopoulos filed Chapter 7 bankruptcy prose having no assets, $1.5 million in judgments and debts and a SS monthly retirement income of $1,353.  There are no Judges with a background in criminal justice or an affiliation with the Caribbean in the SDNY Bankruptcy Court. Nevertheless petitioner filed a motion to dismiss after suffering severe physical injuries and the PBM is objecting through a creditor Zemon. This is another perfect example of how the FBI and the PBM work together. Trustee acting in concert with FBI agents sends debtor to the hospital by ambulance and creditor Zemon a Palm Beach resident acting in concert with the PBM objects to the bankruptcy. Remaining 12 creditors having $1,400,000 in claims don't even bother to appear in three 341 grueling hearings. Also trustee appointed by the US Trustees/DOJ was a brand new trustee an Ian Gazzes retained just for the occasion as obviously no other existing trustee wanted the job of injuring, trying to frame debtor with bankruptcy fraud and prolonging these proceedings indefinitely by committing fraud on the court. This case is about the FBI/PBM estimating that Debtor had substantial Net Operating Tax Losses and seeking to encumber these losses as losses during bankruptcy pass on to the trustee.  Debtor has not filed tax returns for years due to lack of taxable income, but the FBI/PBM estimated these losses to be about $3.7 million. With a tax saving value of $1.85 million they were valuable enough to intentionally encumber. Creditor Zemon, a member PMB illegally restrained debtor's SS retirement benefits and forced bankruptcy. The FBI selected someone "off the street" to be trustee just for the occasion. Both trustee and Zemon are trying to prolong proceedings as long as they can, thus encumbering Debtor's losses for years.  At the end creditor Zemon spends some $75,000+ on the pretext of preserving a $90,000 judgment; however his real motive was to encumber debtor's losses for years on behalf of the PBM.

15. **Papadopoulos v President Obama, US Government,  SDNY 12CIV8736** This case was filed against the President for negligence and the Government pursuant to FTCA, 42 USC 1983 and Bivens (28 USC 1331) seeking to obtain damages and hoping to bring an end to the FBI/PBM conspiracy. The President was sued for failing to put an end to the FBI/PBM conspiracy and commencing a catharsis of the FBI. Case was instantly dismissed by Judge Preska on the bases of the IFP filing ban without prejudice. IFP cases are subject to more scrutiny and rarely survive dismissal at the District level.

However if they make it to the US Supreme Court they frequently get remanded. Motions to leave and two requests to be heard in person have been ignored by the court. Case at the 2nd Circuit as 13-717 was instantly dismissed citing Judge Preska's "bad faith" certification. In dismissing this case District court ignored definitive and tangible proof of the existence of the FBI/PBM as some 50 cases, virtually all Petitioner was involved, were all assigned to a judge formerly a prosecutor or a judge from the Caribbean. The Court also ignored allegations, that for no reason, Petitioner during a hernia operation in 2006 was implanted with a "location monitoring chip" obviously proving the existence of law enforcement in his life. The Court had to assume this allegation as true as it was not feasible to attach x-rays to a complaint or an affidavit. Petitioner made several requests for oral arguments where he could bring the x-rays to court, but oral arguments were never granted and this evidence was intentionally suppressed.

16. **Papadopoulos v President Obama, FBI director Mueller EDNY 13CIV810.** Case was filed as a paying case for the same claims as case 15 and was again assigned to the <u>Honorable Judge Irizarry a former prosecutor and a native of</u> **<u>Puerto Rico</u>**. The only difference between this case and case 15 was that FBI Director Mueller was named as a defendant instead of the US Government. In filling this case as a paying case Petitioner was hoping that the court could not apply the more stringent IFP standards and dismiss the case. The exact same evidence was presented in the complaint and supporting affidavits and oral arguments were requested for the purpose of presenting the x-rays to the court. Case was instantly sua sponte dismissed with motion for reconsideration undecided and un-responded. Case is currently pending at the 2nd Circuit. However Petitioner does not intend to pursue appeal as district court certified "bad faith" and 2nd Circuit already denied IFP status in case 15 and Petitioner has no money to pay court fees.

17. **Papadopoulos v Clerk of the Court of the SDNY 13CIV724** Recently filed seeking declaratory relief vacating decisions and injunctive relief requiring the Clerk to conduct physical lotteries in assigning cases, and reasonable attorney fees. Plaintiff is proceeding based on FR 60(d) dealing with fraud and 42 USC 1983,88 dealing with attorney fees in civil rights cases. Claims were for fraudulent practices designed to influence judicial decisions though outright fraud such as intentionally assigning arbitrary index numbers to accelerate or decelerate decisions enabling the court to issue a filling ban, arbitrarily adding defendants for the purpose of such defendants being

preemptively dismissed, trashing documents, fixing transcripts by eliminating incriminating statements, making intentional errors for the benefit of the defendants and submitting cases to judges with known and predictable ideology in gross violation of Court Local Rules mandating a lottery, thereby influencing judicial decisions. <u>The intent of this case was not to embarrass the Clerk but to vacate 2009- 2010 "Orders of Dismissal" and extend by three to four years the statute of limitations applicable to the FTCA and RICO.</u> Case was dismissed by Judge Preska was also dismissed at the 2nd Circuit as 13-1214. Judge Preska never labeled this case as frivolous as Petitioner in his complaint and supporting affidavits clearly proved fraud by including as exhibits court stamped documents attesting as to the day of the filing v. the index number assigned to them, complaints filed v. docketed records and judicial decisions attesting to the fact that bogus defendants were added by the clerk for the purpose of being preemptively dismissed, background of judges selected by the Clerk to assign cases for the purpose of influencing judicial decisions.

<u>To put it bluntly in all cases the Clerk decided:</u> "Let's send his case Papadopoulos v Good Sam Hospital of West Palm Beach 08-0098 to Judge Cote a former head of the SDNY US Attorney Criminal Division so she can dismiss this case and then he can no longer sue any Florida entities here. Let's send Papadopoulos v. City of New York for selective enforcement of criminal laws to Judge Daniels a former federal prosecutor so he can dismiss them. Let's send Papadopoulos v Astrue (SSA) 10-7980 for disability benefits to Judge Sweet, the most liberal judge we have and maybe he will grand him disability benefits and declare him mentally sick. Let's send all other IFP cases to Judge Preska who is friendly to the FBI and certainly she will dismiss them all." In fact the Clerk for the EDNY perpetuated this pattern: "Let's send his case against NYS for malicious prosecution and false imprisonment to Judge Irizarry a former NYS prosecutor and for sure she will dismiss it, and in the event he sues the FBI and the Fanjuls Judge Irizarry as a former prosecutor and native of Puerto Rico she will certainly dismiss those too. And just in case any issues end up with the Magistrate let's assign Magistrate Judge Mann in all cases formerly with the US Attorney's office".

18. <u>**Papadopoulos v Fanjul Brothers, EDNY 13-2456**</u> <u>Case again assigned to the "perfect judge" Judge Irizarry a former prosecutor and native of **Puerto Rico**.</u> Petitioner in his complaint included the same evidence of relentless judicial assignments to former prosecutors or judges from the Caribbean as definitive

proof that Defendants and the FBI were indeed partners in bringing his demise. Motion seeking disqualification pursuant to 28 USC 455(a)(b) and 28 USC 144 was denied and case was sua sponte dismissed. Judge Irizarry had a legal obligation to refer 28 USC 144 motion seeking disqualification to another judge but failed to do so. Once 28 USC 144 motion was properly submitted Judge Irizarry had no legal authority to render any decisions or dismiss the case until another judge decided the motion, regardless of Judge Irizarry's personal views of the merits of the motion. Clearly the Court in illegally failing to refer 144 motion to another judge and certifying "bad faith" to the 2nd Circuit did not wish to be subjected to further judicial review. Similarly the Clerk of the Court had a legal obligation to promptly issue a default judgment as Defendant's defaulted and the Clerk failed to do so.

## DISCUSION OF SUBSTANTIVE NEW YORK STATE CASES

1. **Papadopoulos vs. Papadopoulos. 350414-01 NYS Supreme Court.** This case was originally assigned to Judge Braun a **former public defender.** Judges with a background in criminal justice are extremely rare in NYS Civil Courts. Judge Braun rendered an absurd decision ordering husband to be paying $100,000 per month in support, legal expenses and property maintenance during the pendency of the divorce. Prior to this action the family's monthly budged was only $40,000. After this decision the case was assigned to Judge Gische because she had clearly demonstrated an ability to make absurd legal decisions based on party affiliation in the Giuliani divorce. Divorce case lasted for four years. Custody of the son was illegally awarded to the wife in gross violation of NYS DR 240 that mandates that biological parents have priority. Husband was the only biological parent. Judge Gische engaged in extortion. After impounding all funds in husband's possession, placing then in escrow with the wife's attorney and leaving husband with no funds, she demanded support payments or his consent in making payments out of the son's assets of $2,500,000 of which defendant was trustee. Her intent was to label son's assets as part of the marital estate. She threatened defendant with incarceration and when defendant refused to consent defendant was incarcerated for two months. Eventually she demanded that wife's attorney proceed by motion in limine to label son's assets as part of the marital estate. She instantly granted the motion. In her final decision she awarded $23,000,000 to the wife and left husband penniless and owing the wife an additional $8,000,000. The marital estate was only $15,000,000. NYS case

Page 11 of 21

law is clear, "after a long marriage its 50-50%".  Judge Gische having prolonged the litigation for four years, having been instrumental into insuring husband could not work during the pendency of litigation and having forced liquidation of all four residences was able to reduce the marital estate to about $5,000,000 after all taxes, legal expenses, expert fees, commissions, penalties for premature liquidation of retirement assets were paid. She even left the son penniless and the wife straggling. Judge Gische appears to have received approximately $50,000 during her reelection campaign in straw contributions. She was also removed from matrimonial after her decisions in the Giuliani and Papadopoulos divorces.  <u>There is no other matrimonial case in the State of New York where the wife was awarded 153% of a substantial marital estate and the husband owed the wife 53% of the estate plus maintenance.</u>

2. <u>**Papadopoulos vs Gassner 602273-07 NYS Supreme Court**</u>, Plaintiff seeking $167,000 pursuant to contracts from a pretend girlfriend acting in concert with the FBI/PBM. <u>Case was again assigned to Judge Braun **former public defender.**</u> Case was dismissed due to appearance default as the subway Plaintiff was riding was stopped by the Police for 45 minutes and the judge refused to entertain motion to vacate default judgment.

3. <u>**Papadopoulos vs. Kaminska 08-104493 NYS Supreme Court**</u>.  Plaintiff was seeking $75,000 pursuant to contracts from a pretend girlfriend while acting in concert with FBI/PBM. Defendant failed to repay loans. <u>Case was assigned to Judge Scarpulla **former federal employee** and attorney with FDIC. Judges that were formerly federal employees are extremely rare in NYS Courts.</u> Plaintiff after realizing that Judge Scarpulla was assigned a case where the Federal Government and the FBI had an interest abandoned the case. One case that Judge Scarpulla was assigned was Reisner v. Catone  (929 NYS .2d 403) where a psychiatrist sued the office of Professional Discipline, Department of Education seeking to have a Dr. Leso investigated and disciplined as he was teaching correction officers in Guantanamo Bay Prison how to torture detainees obviously in gross violation of his Hippocratic Auth.

4. <u>**Marks Peneth vs. Papadopoulos 601039-08 NYS Supreme**</u>. In this case accountants compiled bogus bills and sued Papadopoulos. <u>Case was assigned to Judge Sherwood a native of **Jamaica**. Judges from the Caribbean are extremely rare in NYS Civil Courts.</u> Court refused to allow evidence and testimony that defendant having a BA in Economics and a MBA in Finance/Statistics compiled all the reports for the accountants to put in their

letterhead and sign.  Judge Sherwood also did not require Plaintiff to prove the work they had done and relayed on bills compiled by the accountants. Absurd Judgment was awarded for the Plaintiffs in the amount of $90,000 for work they never did. Judge Sherwood appears to be routinely assigned cases where the PBM has an interest and renders unreasonable decisions.  In Trump Securities LLC v Purolite Co. (2012 NY Slip Op 06366) he awarded some $600,000 to the Plaintiff and he was criticized by the First Department stating that "recovery here is substantial given the more limited nature of the services... provided".  Trump Securities LLC is an extremely secretive entity with no website and a fake telephone number listed. It is a small investment banking boutique with a formidable record of suing their clients in state and federal courts. Complainant in the criminal proceedings Julia Mineeva currently works for them.

5. **Papadopoulos vs. DCFS (DBA Mercedes Benz) NYS CV077246-08. Civil Court,** Plaintiff sued for $25,000 which was the equity in his car as defendant improperly took possession of his car. <u>Case was initially assigned to Judge Engoron a member of the **Dominican Republic** Bar Association who summarily dismissed Plaintiff's claims</u> and ordered an inquest on Defendant's counter claims. Another Judge, Judge Moulton held an inquest and awarded Defendant a judgment in the amount of $100,000.  $60,000 for attorney fees plus the car.  $60,000 award for attorney's fees in Civil Court is absurd in a case where there were was one motion to dismiss, no discovery and only a two hour inquest.

6. **<u>Papadopoulos v Argo, Tama Davis NYS Civil 07-067932</u>**   Case was filed against a Tama Davis and two brokers for defrauding plaintiff of a $10,000 deposit for a rental apartment. Defendant offered to sublet her apartment, took plaintiff's $10,000 and fled to the West Coast. <u>Plaintiff was ordered by Judge Engoron a member of the **Dominican Republic** Bar Association to serve defendant by publication in the NY Times which cost some $5,000 even though other newspapers charge less than $1,000.</u> Since Defendant lived in the West Cost there was no possibility Defendant would see the advertisement.  It was a form of extortion by Judge Engoron stating "either spend $5,000 or abandon the case".  Defendant obtained 13 bench trial adjournments after the case was marked "final". Numerous Judges including Engoron, Bluth, Moulton, Mendez (Judge Mendez a native of the Dominican Republic actually initially issued a favorable order expediting the case and then overruled himself upon motion to renew and reargue) and others tried

to extort Plaintiff's cooperation in abandoning the case by perpetually adjourning trial. <u>There is no other case in NYS where trial has been adjourned at the request of the defendant 13 times after it was marked final.</u> Eventually the State brought a criminal court judge, Judge Nervo to preside over the trial. Judge Nervo conducted a mockery of a trial not allowing Plaintiff to testify and not allowing Plaintiff to examine witnesses and absurdly awarding $50,000 to the Defendant. During the lunch break numerous court employees knowing that Judge Nervo intended to frustrate Plaintiff followed Plaintiff around, including the restroom, to insure that plaintiff did not take out his frustration at the building. <u>Judge Nervo was a **Criminal Court Judge** for the years 2009-2012 brought in NYC Civil Court just for the occasion.</u>

7. <u>**Papadopoulos vs. Arwin 74th street et al NYS Civil Court 67931-07**</u>. Litigation pursuant to the Fair Credit Reporting Act. Derogatory information was improperly entered in Plaintiff's credit report for the purpose of cutting off credit. <u>Case was assigned to Judge Engoron a member of the Bar of the **Dominican Republic** and improperly dismissed.</u> Judge Engoron ignored the FCRA and erroneously stated that in a claim pursuant to the act a showing of malicious intent is required. This is not true as the act allows claims for negligence. Plaintiff was able to settle identical cases for about $5,000 before any Judge formerly in criminal justice or having an origin form the Caribbean dismissed them.

8. <u>**Eisenberg vs. Papadopoulos NYS Civil CIV11065-09**</u> A lawyer compiled bogus bills and sued Papadopoulos. During trial the court refused to allow testimony and evidence that Defendant did all the work for the Lawyer to submit it to the Court in his absence to Europe. Court awarded judgment for $10,000 to plaintiff for work he never did.

9. <u>**Papadopoulos v Mineeva NYC Small Claims CS2594-10**</u> . After three years, Plaintiff abandoned case concluding there is no chance any Judge in the State of New York will find in his favor regardless of the merits of the case. Mineeva, a prostitute and the complainant in the criminal proceedings stole about $5,000 of property from Plaintiff's apartment. Plaintiff reported it to the police and police wrote a report but refused to pursue recovery the property. Had this matter gone to trial any Judge would have believed the prostitute and dismissed the claims.

10. <u>**Revcon LLC v Mineeva  NYC Small Claims CS62252-09**</u> After four years,  case was dismissed while Plaintiff was incarcerated.  Judge Moulton refused to grand motion to reinstate case despite no appearance by defendant.  Plaintiff

refiled claims as Papadopoulos v Mineeva SC2650-12 pursuant to contracts for refusing to pay for services rendered. Plaintiff has a written contract, evidence that he performed, evidence of non-payment, evidence that there was an understanding among parties that money was due and evidence of promises in emails by the Defendant to pay. Plaintiff was able to obtain a default judgment. Upon motion to vacate default by Defendant Judge D' Auguste conducted a hearing. For no reason abused and harassed Plaintiff, concluded that in seeking payment pursuant to a contracts Plaintiff was harassing Defendant, called Plaintiff names, threaded sanctions, threatened Plaintiff with criminal contempt, loudly criticized Plaintiff, for no reason summoned additional court security in the courtroom, and dismissed claims. Despite the apparent judicial harassment of the Plaintiff, motion to renew and reargue was filed and pending. After 6 months no written decision was ever rendered obviously to encumber and complicate appeal.

11. **People v Papadopoulos. Southampton Justice Court, 10090308**. Criminal Proceedings. Upon allegations by Mineeva, the prostitute the FBI/PBM retained from the NYC Fanjul prostitution ring, Defendant was arrested for Harassment in the second degree a violation according to NYS Penal Code. Violations are customarily punishable with a $30 fine and routinely dismissed leaving no criminal record. The Honorable Judge Kooperstein ordered a psychiatric examination. <u>In the entire criminal history of the State of New York no court has ever ordered a psychiatric examination where the charge was a violation.</u> Defendant is not even a resident of Southampton and Southampton tax payers were paying for the examination and possible involuntary confinement.

12. **People v. Papadopoulos NYC Criminal Court proceedings 10-068924**. Upon allegations of Mineeva for verbal incidents, that took place a year earlier, claiming that Defendant called her a prostitute and told her she was working for the FBI, which "caused her fear and alarm for her health and safety", Defendant was arrested for Aggravated Harassment in the second degree a misdemeanor. <u>Case was assigned to Judge Amaker a native of **Puerto Rico**. Judges from the Caribbean are extremely rare in NYS Criminal Courts. The attorney assigned to him was also a Ms. Chevalier native of **Haiti**.</u> Judge Amaker ignored several motions by defendant to dismiss. She ignored motion to dismiss claiming violation of due process and speedy trial constitutional rights. She ignored NYS CPL 30.30 readiness by prosecutor, 530 rights to bail when the highest charge is misdemeanor, and failed to complete CPL 730

stopping at 730.30 ordering one examination and conducting one hearing while two examinations and two hearings were required. In sum Defendant was entitled to dismissal based on CPL 30.30, entitled to bail based on 530 and two evaluations and two hearings based on 730. Lawyer appointed by the State failed to represent him property and committed malpractice. Among others failed to elevate case to Supreme Court where defendant would have been eligible for a grand jury and could easily prove to a jury he was innocent of the charges. Failed to attend Psychiatric examinations. Having knowledge of the existence of examinations attesting to defendant's sanity failed to introduce them as evidence. During a hearing he even failed to object once to the testimony presented as State Psychiatrists who absurdly concluded that if "you believe that the FBI will cooperate with gangsters you are delusional" ignoring the findings in US v John Connolly and related cases. Lawyer even failed to cross examine Psychiatrists as to their conclusions. Eventually Judge Amaker incarcerated defendant for three months at Rikers Island and detained him for three months at Manhattan Psychiatric Center. No first time offender, accused of a non-violent misdemeanor, with no determination of dangerousness has ever spent time in prison and in a mental institution in the State of New York. Eventually Judge Amaker appears to have enriched herself by purchasing a $1,000,000 mansion in Fieldstone, Bronx.

13. **In The Matter of Gregory Papadopoulos. 531047-11 NYS Supreme Court.** This case arose while Papadopoulos was detained at Manhattan Psychiatric center. First he was illegally detained without any determination of dangerousness as required. There were three hearings regarding his release and regarding forced administration of drugs. In all three hearings the State trucked in every single judge that sits in the Appellate Term obviously to prejudice his appeal. The State failed to honor an OSC pursuant to MHL 9.35 demanding a prompt jury trial regarding his release. Upon his release Papadopoulos made an IFP OSC to seal psychiatric records at MPC pursuant to MHL 33.14. This application should have gone to the "Part Term" Judge, however was diverted to Judge Scarpulla, a former federal employee and denied. Motion to renew and reargue was also denied. Appeal currently pending at the 1st Department.

14. **Papadopoulos v City of New York 10-CV-066177** This case is against the City of New York for false arrest and injuries suffered during the arrest. Two NYPD detectives from a far away precinct broke into Petitioner's apartment

while he was asleep, without a warrant at 12:30 am, used exercise force and violently broke Plaintiff's ribcage. They arrested him and brought him into a precinct. They refused to investigate by asking any questions and advised him it "had something to do with his girlfriend". They detained him for 43 hours in the precinct. While in police custody they took him to a hospital where he was diagnosed as having been assaulted and had a broken ribcage. They waited until 6:00 pm in the eve of Yom Kippur to bring him to court. They knew that in the eve of Yom Kippur the only Part open was Part D where Judge Amaker (**Puerto Rican**) was presiding. While in Court Plaintiff found that he was being charged with some verbal incidents that had taken place a year ago. (What took them so long?). Upon release they kept Plaintiff's cell phone that had pictures of Mineeva and could have been used in his defense. They also kept his keys and returned to his apartment for the purpose of destroying evidence that could have been used in his defense. Plaintiff has Hospital records attesting to the rib fracture labeling it as assault and numerous emails, dated pictures, dated computer files and cancelled checks for sex attesting to the fact that Mineeva lied to the police. After three years the case is still at the conference level as the City is making unreasonable documents request and every judge in Civil Court is granting adjournments.

15. There are an additional ten NYS less substantive cases filed against individuals and entities who acted in concert with the FBI/PBM, however Papadopoulos never prevailed in a motion or in his claims.

Prior to 2000, Plaintiff with no knowledge of the Law had 100% successful prose litigation and collection record, prevailing against the City of New York in NYC Small Claims for damaging his car while towing it away, a NYC camera store in NYC Small Claims, a building contractor for failing to complete his contract and $52,000 against Merrill Lynch. He also had a good record with lawyers prevailing against a substantive adverse possession claim in Florida. Subsequent to 2000 Plaintiff never prevailed in a case or even in a motion.

## PROOF OF THE EXISTANCE OF A CONSPIRACY AND COOPERATION BETWWEN THE FBI AND THE FANJUL BROTHERS.

Following is a list of cases and judicial assignments and computation of probability for each assignment by court and computation of a cumulative probability for all courts:

**Southern District of Florida (2001-2005)** Case against the FBI was filed in SDF and case was assigned to Judge Dimitruleas. Between WPB and Fort Lauderdale divisions there were 6 judges at the time. Judge Dimitruleas was the only judge with a background in criminal justice. Accordingly the probability of this case being assigned to Judge Dimitruleas was **0.167**
Bankruptcy case was assigned to judge Hyman. Between WPB and Fort Lauderdale divisions there were 4 judges. Judge Hyman was the only judge with a background with the US Attorney's Office. The rest of the judges had a general bankruptcy background. The probability of this case being assigned to Judge Hyman was **0.25**

**NYS Civil Court(2007-2012)** There were 6 cases in NYS Civil Court. 4 were assigned to Judge Engoron the only native of the Dominican Republic, 1 to Judge Nervo the only judge that was formerly a criminal court judge, and 1 to Judge Bluth. There were 16 judges in the court mostly Americans with a background in civil litigation. Judge Engoron was the only Judge from the Dominican Republic and Judge Nervo, a criminal court judge appears to have been brought in just for the occasion.  The cumulative probability of these assignments can be calculated as follows: 1/16 to the 5th power or **0.000001**

**NYS Supreme Court(2001-2013)** There were 5 cases in this court. The court has about 40 Judges mostly Jewish American with a background in civil litigation. 2 Cases were assigned to Judge Braun, the only Judge that was formerly a public defender. 1 was assigned to Judge Sherwood, the only judge from the Caribbean (Jamaica). In the absence of other desirable judges 2 cases were assigned to Judge Scarpulla a long time federal employee and attorney for the FDIC. The cumulative probability of these selections can be computed as follows. 3/40 to the 5th power or **0.000002**

**NYC Criminal (Manhattan)(2010-2011)** The only criminal case was assigned to Judge Amaker a native of Puerto Rico. The lawyer assigned to him was also a native of Haiti. There are 10 parts in the Court and Judges are mostly American Jewish with a few African Americans. The probability of getting the only native of the Caribbean (Puerto Rico) is **0.1**

**EDNY(2012-2013)** All 3 cases were assigned to Judge Irizarry a native of Puerto Rico and former NYS prosecutor and Criminal Court Judge. There are 18 active Judges in the EDNY. 11 have a civil background and 7 have a background with the US Attorney's Office or similar state office. So the overwhelming majority of judges have a background in civil litigation. Also Judge Irizarry is the only native of Puerto Rico or nearby islands. The probability of all three cases be assigned to Judge Irizarry is 1/18 or **0.0556**. (Plaintiff was told that local court rules mandate that all prose cases by a litigant be assigned to the same judge for life)

**SDNY(2007-2013)** The events in the SDNY are more difficult to quantify. There are 27 active judges in the SDNY. 18 had a civil background and 9 were formerly with the US Attorney's Office. So the overwhelming majority of judges have a background in civil litigation. There was one, Judge Morrero native of Puerto Rico, but after striking down portions of the Patriot Act he was deemed undesirable. Chief Judge was Judge Kimba Wood an expert in Antitrust Laws and RICO and obviously was deemed undesirable. Judge Wood's tenor as Chief Judge should have lasted until early 2013 but she was prematurely removed as Chief in early 2009 and replaced by Judge Preska. Plaintiff was indirectly informed through his son that he "will never be able to bring another civil action against the FBI and the Fanjuls again". Obviously replacing Judge Wood with Judge Preska was intended to achieve this goal and obviously Judge Preska received consideration in the form of a promotion. The comradery between Judge Preska and the FBI can be seen in other cases such as US v Hammond 12CR185 where defendant sensing partiality submitted a motion seeking 455 disqualification and the FBI rushed to the court's assistance in defusing the motion by compiling a lengthy investigation and report concluding that the court's husband had no financial interest in the proceedings. Accordingly no court should place any weight on any decisions made by Judge Preska as she was promoted to Chief Judge of the SDNY for the purpose of protecting the FBI/PBM and their financial interests.

There were total of 10 cases in the SDNY.

5 cases were arbitrarily assigned to Judge Preska as Chief Judge. There are no Local Court Rules mandating that IFP actions are automatically assigned to the Chief Judge. Such a probability is 1/27 to the 5th power or **0.0000001**

1 case was assigned to Judge Cote a former head of the US Attorney for the SD Criminal Division and the probability of such an assignment is 9/27 or **0.333**

2 cases were assigned to Judge Berman a rather impartial judge. At the time however, the FBI was assigning high profile FBI framing and entrapment cases to Judge Berman such as the Afia Siddiqui case. The more substantive case against the FBI/PBM was really dismissed by Magistrate Judge Ellis, and dismissal was affirmed at the 2nd Circuit by <u>Judge Cabranes the only native of Puerto Rico in the Court.</u>

1 case was assigned to Judge Daniels former federal prosecutor. This probability is **0.333**

Last, 1 case seeking Disability payments from SSA, was assigned to Judge Sweet, openly the most pro-civil rights and liberal Judge in the Court. It was in the FBI's best interest while seeking disability payments to document mental health issues and cover up their corruption.

**2nd Circuit (2010)** There are about 15 active judges in the court. The only substantive case was assigned to Judge Cabranes the only native of Puerto Rico to write the opinion. The probability of such an assignment is 1/15 or **0.0667**

**Summary and computation of cumulative probability**

Following are the probabilities for getting a Judge formerly in criminal justice or a native from the Dominican Republic, Puerto Rico or Jamaica for each court. SDF: **0.0418**;   NYS Civil Court: **0.000001**;  NYS Supreme Court: **0.000002**; NYC Local Criminal Court: **0.1**;   SDNY: **0.00000001**;  EDNY: **0.0556**;  2nd Circuit Court of Appeals: **0.0667**

To calculate the cumulative probability of these assignments being random in all courts one multiplies all these probabilities and the result is **0.00000000000000000000000000031** which is a number so small that it is incomprehensible. The inverse of this number is perhaps more comprehensible. **The probability of all these judicial assignments being random is 1 in 3.22 octillions.**

Clearly the FBI by hacking in Petitioner's computer/word processor had advance knowledge of impending filings, and rushed to the court selecting a judge before Plaintiff appeared in court and naively submitted a complaint and paid the fees.

Accordingly, this pattern of judicial assignments clearly supports the allegations that **FBI Director Mueller and the Fanjul Brothers are indeed partners.**

Statistical proof is admissible and is extensively used, and in particular in employment discrimination cases.

Last, Petitioner is certainly qualified to calculate basic probabilities usually taught at the high school level. Petitioner has advanced degrees from Columbia University in Economics, Econometrics, Finance, Statistics and Probability Theory with honors. Plaintiff also has partial work towards a PhD in the same subjects at New York University.

**Conclusion:** The above record clearly proves that starting with 2000 judicial assignments in Petitioner's cases have not been random, and indeed Judges have been selected based on two criteria: first a background in criminal justice or similar conservative type of ideology believed to be submissive to the FBI, or an origin or affiliation with the Caribbean and easily enticed or bribed by the Fanjul family. The Fanjuls have an established truck record of bribery (they were fined $440 million by the SEC in 1996 for bribing public officials in exchange for municipal bond underwritings) it would not be unthinkable or implausible to offer substantial sums to a judge with offshore accounts in the Caribbean Islands. Although the Fanjul Brothers appear aristocratic and philanthropic, they routinely surround themselves with convicted criminals such as well known Alberto Vilar (Amerindo Investment Advisors) another Cuban native.

This record of litigation and judicial assignments clearly proves the cooperation between the FBI and the Palm Beach Mafia (Alfonso and Pepe Fanjul) and clearly proves that Plaintiff's claims are not frivolous. No other high profile resident in Palm Beach has anything to do with the Dominican Republic and the Caribbean. **The conclusion therefore is plain and simple: FBI Director Mueller as well as former Director Freeh and the Fanjul Brothers are and were partners.**

Plaintiff wishes to point out that to prove conspiracy, due to its secretive nature, circumstantial evidence is sufficient and direct proof is not required. Hopkins v. Andaya 958 F .2d 881 888; Santos v. Gates 287 F.3d 846; Haley v. Dormire 845 F.2d 1488 1490; White v. Walsh 649 F.2d 560 561; Sparkman v. McFarlin 606 F.2d 261 268; US v. Williams 714 F.2d 777; American Tobacco v. US, 328 U.S. 781 790 66: and the famous Glasser v. US, 315 U.S. 60 80 62.

July 15, 2013